IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARYLAND CASUALTY CO., a/s/o )
IMAMIA, INC., )
    Plaintiff, )
     ) Civil Action No.: 14-245
    vs. ) District Judge David S. Cercone/
     ) Magistrate Judge Robert C. Mitchell
PREFERRED FIRE PROTECTION, INC., )
    Defendant. )

# REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. RECOMMENDATION

On April 22, 2014, Defendant, Preferred Fire Protection Inc. ("Preferred") filed a partial motion to dismiss. Plaintiff, Maryland Casualty Company ("Maryland") as subrogee of Imamia, Inc., filed its response on May 13, 2014. Defendant filed a reply on June 5, 2014.

After careful review of Defendant's partial motion to dismiss, its brief in support, Plaintiff's response and Defendant's reply, for the following reasons, it is respectfully recommended that Defendant's partial motion to dismiss be granted in part and denied in part. It is specifically recommended that Defendant's motion to dismiss be granted in part as to Plaintiff's negligence claim and that claim be dismissed with prejudice and that Defendant's motion to dismiss be denied in all other respects.

## II. REPORT

### A. Background

Preferred Fire Protection Inc. is engaged in the fire protection business and was hired by Imamia in or about August 2011 to "examine, inspect, text, troubleshoot, maintain, repair, bring up to code, and service the automatic fire sprinkler system" that was already installed on

1

Imamia's property. Compl. [ECF No. 1] at ¶¶ 2, 7; Service Contract [ECF No. 11-1]. On February 1, 2013, a pipe associated with Imamia's sprinkler system froze and ruptured causing a flood on its premises. *Id*. at ¶ 8. Plaintiff claims that the rupture of the pipe and the flood were caused by Preferred's failure to perform its services associated with the sprinkler system in a "careful, good and workmanlike manner, and to insure that the water-filled pipes in the system were protected and/or prevented from freezing." *Id*. at ¶ 9.

Subrogated to the rights of their insured, Maryland filed suit against Preferred on February 24, 2014 for negligence, breach of contract and breach of warranty. *Id*. at ¶¶ 16-23. Preferred filed a partial motion to dismiss[1] arguing that Maryland has not stated a negligence claim because it is barred by the gist of the action and economic loss doctrines, as it has asserted a claim for breach of contract against Preferred based upon an existing contract between the parties. Def.'s Mot. to Dismiss [ECF No. 6] at ¶ 5. Additionally, Preferred argues that Maryland has not stated a claim for breach of warranty because such a claim is not valid with respect to service contracts. *Id*. at ¶ 6. The Court will discuss each argument separately.

B. Standard of Review

To determine whether dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint and in making this determination, a court must read the complaint in the light most favorable to the plaintiff and all factual allegations must be considered true. *Estelle v. Gamble*, 429 U.S. 97, 99 (1976). The court must also draw all

---

[1] While Preferred does not identify its motion as a partial motion to dismiss, because it does not seek to dismiss every claim against it, the Court will consider its motion as a partial motion to dismiss.

2

reasonable inferences from all "well-pleaded" allegations contained in the complaint. *Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963). In determining whether a plaintiff has met this standard, the reviewing court must ignore legal conclusions, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[,]" . . . "labels and conclusions[,]" and "naked assertions [that are] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citations omitted). Thus, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

A court may take into consideration matters of public record, exhibits attached to the plaintiff's complaint and undisputedly authentic documents attached to a motion to dismiss without converting a motion to dismiss into one for summary judgment. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n. 2 (3d Cir. 2006); *Sentinel Trust Co. v. Universal Bonding Ins.*, 316 F.3d 213, 216 (3d Cir. 2003). Preferred attached a work proposal, a service contract and its standard terms and conditions and refers to it as the contract between the parties. Plaintiff disputes the authenticity of these documents. However, this court's reference to said documents are for background purposes only and are not dispositive of defendant's motion and does not convert Preferred's motion into one for summary judgment.

C. Discussion

i. *Gist of the Action and Economic Loss Doctrines*

Plaintiff sets forth a negligence claim and a breach of contract claim in connection with Defendant's allegedly improper workmanship and subsequent pipe rupture and flooding at Plaintiff's facility. Plaintiff's negligence claim alleges that

> [t]he freeze-up, rupture and unintended discharge of water from the
> system and resulting flood at the premises on or about February 1,

3

> 2013, and the resulting damages and losses sustained by the plaintiff, were proximately caused by the . . . negligent acts and/or omissions of defendant [by]: causing and/or failing to prevent the . . . freezing and rupture of [the] sprinkler pipe and the resulting flood; [i]nspecting, testing, troubleshooting, evaluating, assessing, maintaining, servicing, bringing up to code, and repairing the sprinkler system in such a way as to expose it to and/or fail to prevent it from freezing temperatures; [f]ailing to consider, evaluate, plan and/or account for temperature conditions in the areas in which the sprinkler piping ran and/or was routed; [f]ailing to follow applicable laws, statutes, codes, ordinances, regulations, and industry standards; [f]ailing [to] adequately and properly . . . select, train and/or supervise its employees, servants, agents, contractors and subcontractors; and [o]therwise acting negligently or without due care in a manner that may be revealed in the course of discovery.

Compl. [ECF No. 1] at ¶ 15. Likewise, Plaintiff's claim for breach of contract states that defendant

> entered into oral and/or written contracts and/or agreements with Imamia relating to the inspection, testing, troubleshooting, evaluation, assessement [sic], maintenance, servicing and repair of the sprinkler system, which expressly and/or impliedly required [Defendant] to keep the aforesaid system and all parts thereof from being exposed to excessively cold and/or freezing temperatures. . . . [Defendant] breached and/or violated the aforesaid contracts . . . [and such breach] proximately caused [Plaintiff's] . . . damages.

*Id*. at ¶¶ 17-19.

In support of its motion to dismiss, Defendant argues that Plaintiff's negligence claim is specifically related to the actions that were taken during the repair and inspection of the sprinkler system that were completed at the request of Imamia contemplated by the parties and terms agreed to by the contract entered into. Def.'s Br. in Supp. of Mot. to Dismiss [ECF No. 7] at 9. Defendant further argues that it had no duty to perform this work prior to entering into an agreement with Imamia, the damages that Plaintiff alleges are purely economic and it is plaintiff's attempt to replicate a breach of contract claim as a tort claim. *Id*. Defendant therefore

4

concludes that Plaintiff's negligence claim is barred because the "gist" of its action lies in contract. *Id.* Additionally, Defendant argues that Plaintiff's negligence claim is barred by the economic loss doctrine because "Plaintiff has asserted only economic losses arising from alleged damage to property." *Id*. at 6.

Plaintiff responds that Defendant's gist of the action argument is premature because other courts have routinely declined to decide such an argument at the motion to dismiss stage. Alternatively, Plaintiff responds that it should be permitted to pursue actions in both contract and tort because Defendant's conduct supports both causes of action. Pl.'s Br. in Op. to Def.'s Mot. to Dismiss [ECF No. 13] at 15-17. Specifically, Plaintiff argues that "Preferred breached its common law duty to adhere to a well-established standard of care to prevent well-known and foreseeable disastrous consequences, while at the same time breaching its contractual duties to satisfy Imamia's legitimate expectations that its payment would buy it a working system." *Id*. at 17. As for Defendant's argument that the economic loss doctrine bars Plaintiff's claim, Plaintiff argues that because its claim concerns services performed by Defendant, the economic loss doctrine does not apply. *Id.* at 24.

Primarily, the economic loss doctrine does not entirely apply in this circumstance. While Pennsylvania[2] law precludes recovery for purely economic losses in tort actions where the plaintiff has suffered no physical or property damage, the Court of Appeals for the Third Circuit has explained that this doctrine has originated in the context of product liability tort claims where the product malfunctions, and cases damage to only the product. "As a result, although . . . both

---

[2]   While the Pennsylvania Supreme Court has never expressly adopted the economic loss doctrine, lower Pennsylvania courts have done so and the Court of Appeals for the Third Circuit has expressly predicted that the Pennsylvania Supreme Court would apply the doctrine in certain circumstances. *See Duquesne Light Co. v. Westinghouse Elec. Corp*., 66 F.3d 604, 618 (3d Cir. 1995); *King v. Hilton-Davis*, 855 F.2d 1047, 1053-54 (3d Cir. 1988).

the economic loss doctrine and the gist of the action doctrine are applicable to tort actions that inappropriately stem from contract liability, the gist of the action doctrine 'is a better fit' for non-products liability cases[,]" and the economic loss doctrine is reserved for those cases involving products liability. *ClubCom, Inc. v. Captive Media, Inc.*, 2009 WL 249446, at *10 (W.D.Pa. Jan. 31, 2009) (quoting *Bohler-Uddeholm America, Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n. 11 (3d Cir. 2001)). The reasoning of the Court of Appeals is persuasive in this case. Plaintiff's action involves the performance of a service by Defendant, therefore the claims will be analyzed solely in the context of the gist of the action doctrine. *See accord Cosmetique, Inc. v. Unreal Mktg. Solutions, Inc.*, 2009 WL 4891891, at *2 (W.D.Pa. Dec. 16, 2009); *Tsudis Chocolate Co. v. FGH Consulting USA, Inc.*, 2008 WL 219348, at *3 (W.D.Pa. Jan 25, 2008).

Under Pennsylvania law[3] the gist of the action doctrine bars a party from bringing a tort claim where the "essence of the claim actually lies in a contract that governs the parties' relationship."[4] *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa.Super. 2005). This doctrine is a "common law theory 'designed to maintain the conceptual distinction between breach of contract claims and tort claims' by precluding 'plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F.Supp.2d 520, 527 (W.D.Pa. 2011) (quoting *eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa.Super. 2002) (internal citation omitted)).

---

[3] While Preferred provides this court with a choice of law analysis, such a discussion is unnecessary. The contract between the parties provides a choice of law provision for substantive Pennsylvania law to apply and neither party disputes that Pennsylvania law applies to Plaintiff's claims.

[4] Like the economic loss doctrine, the Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine. Nevertheless, the Pennsylvania Superior Court and the United States Court of Appeals for the Third Circuit have predicted it would do so, therefore this Court will follow suit and discuss Defendant's argument on this point. *See Williams v. Hilton Grp. PLC*, 93 Fed.App'x 384, 385-86 (3d Cir. 2004) (collecting cases); *eToll*, 811 A.2d at 14.

While "[t]here is no steadfast rule to determine whether a plaintiff is simply recasting an ordinary breach of contract claim as a tort claim[,]" *Longview Dev. LP v. Great Atl. & Pac. Tea Co., Inc.*, 2004 WL 1622032, at *3 (E.D.Pa. July 20, 2004), the Pennsylvania Superior Court has fashioned four scenarios in which the gist of the action doctrine bars a tort claim. *Hart v. Arnold*, 884 A.2d 316, 340 (Pa.Super. 2005). A tort claim is barred if it:

> 1. [arises] solely from a contract between the parties; 2. where the duties allegedly breached were created and grounded in the contract itself; 3. where the liability stems from a contract; or 4. where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* at 340. In order for a tort and contract claims to coexist, the tortious wrong ascribed to the defendant must be the crux of the action, with the contract claim being collateral. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-104 (3d Cir. 2001). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* (quoting *Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa.Super. 1996)). *See also eToll*, 811 A.2d at 14 ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.") (citations omitted); *Egan v. USI Mid-Atl., Inc.*, 92 A.3d 1, 8 (Pa.Super. 2014) (same). This legal distinction is imperative because "[t]o permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions." *eToll*, 811 A.2d at 14. The test in determining whether the tort action is permitted, "is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *Indalex Inc. v. Nat'l Union Fire*

*Ins. Co. of Pittsburgh*, 83 A.3d 418, 424

By way of example, in *Bohler*, a breach of a shareholder's fiduciary duty to its company was not barred by the gist of the action because the court found that such a duty arose out of a social policy a shareholder has to its company, irrespective of the shareholder agreement imposing a fiduciary duty on the shareholder. *Bohler,* 247 F.3d at 103-105.  The court contrasted this by finding that there was only a breach of contract action available for a purported misappropriation of trade secrets because such a cause of action arose from mutual agreements from the parties and were not governed by some overarching social policy that the shareholder owed to the company. *Id*.

Here, Preferred's duty to Plaintiff ultimately stemmed directly from the contract entered into between it and plaintiff.  It was under no independent obligation to Plaintiff, nor is there any overarching social policy placed on Preferred for the duties that Plaintiff seeks to impose.  While Plaintiff argues that Preferred "breached its common law duty to adhere to a well-established standard of care to prevent well-known and foreseeable disastrous consequences," it cites to no authority for this proposition, and this court will not impose such an expansive duty on Preferred when it has outlined its obligations in its contract with Plaintiff.  The essence of this action rests in contract; the duties breached, *i.e.*, failing to adequately perform the repair and inspection and adequately preventing the system from freezing were, by Plaintiff's admission, obligations of the contract itself.  Preferred's liability for failing to perform these services ultimately stem from the contract between the parties, and Plaintiff's claim essentially duplicates the breach of contract action.  A finding that Preferred failed to inspect or repair or safeguard the system from exposure to freezing temperatures, or failed to perform these services in a workmanlike manner under the contract is dependent on and duplicative of any negligence claim.  Accordingly, it is respectfully

recommended that Plaintiff's claim for negligence be dismissed with prejudice, as the gist of Plaintiff's action resides in contract.

### ii. Breach of Warranty

Plaintiff alleges that Defendant "expressly and/or impliedly warranted that it would perform and/or cause to be performed their work in regards to the sprinkler system in a good and workmanlike manner. . . . [Defendant] breached and/or violated the aforesaid express and/or implied warranties[, which] proximately caused [Plaintiff's] . . . damages." Compl. [ECF No. 1] at ¶¶ 21-23.

Defendant argues that no express warranties were provided to Imamia and the implied warranties that arise under the Uniform Commercial Code ("U.C.C.") do not apply to services for contracts, therefore Plaintiff's claim for a breach of warranty should be dismissed, as the contract was a contract for services. Def.'s Br. in Supp. of Mot. to Dismiss [ECF No. 7] at 10.

Plaintiff responds that it has pled a cognizable cause of action for the express warranties by stating in the complaint that Preferred "expressly . . . warranted that it would perform and/or cause to perform their work in regards to the sprinkler system in a good and workmanlike manner." Pl.'s Br. in Op. to Def.'s Mot. to Dismiss [ECF No. 13] at 11. Moreover, it responds that it does not seek a cause of action arising under the U.C.C., but rather the implied warranty that services will be performed in a good and workmanlike manner recognized by Pennsylvania law. *Id*. at 11.

Under Pennsylvania law, "[o]ne who undertakes any work impliedly assumes that he will do it with ordinary skill and care, and becomes liable to make compensation for not doing so." *Huling v. Henderson*, 29 A. 276, 278 (Pa. 1894); *Goldstein v. United Lift Serv. Co., Inc.*, 2010 WL 4236932, at *3 (E.D.Pa. Oct. 25, 2010) (same); *Metro. Edison Co. v. United Eng'rs &*

*Constructors, Inc.*, 4 Pa. D. & C.3d 473, 482-83 (Pa. Ct. Com. Pl. 1977) (same). "In the construction context, courts have found an implied warranty to perform services in a workmanlike manner in order to protect the party 'who stands in a position of unequal knowledge.'" *Goldstein*, 2010 WL 4236932, at *3 (applying Pennsylvania law) (quoting *Pittsburgh Nat. Bank v. Welton Becket Assocs.*, 601 F.Supp. 887, 892 (W.D.Pa. 1985)). *See also* 17A Am. Jur. 2d Contracts § 612 ("A contracting party may be bound by the terms of the contract to perform it in a good and workmanlike manner. Moreover, as a general rule, and unless the agreement evidences an intent to the contrary, there is implied in every contract for work or services a duty to perform skillfully, carefully, diligently, and in a workmanlike manner. A failure to comply with this implied duty to perform in a skillful and workmanlike manner may not only defeat recovery, but may entitled the other party to damages.").

The same rationale applies here. Imamia and Defendant contracted for Defendant to provide services, namely, to inspect and service Imamia's fire sprinkler system. Implied in this contract is that the services would be performed by Defendant in a workmanlike manner. Plaintiff claims that the work was not performed in a workmanlike manner, causing the ruptured pipe and subsequent flooding to occur. Taking all of the allegations in the complaint as true, as the Court must, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a cognizable action for breach of warranty to perform in a workmanlike manner. Accordingly, it is respectfully recommended that Defendant's motion to dismiss this claim be denied.

D. Conclusion

For the foregoing reasons, it is respectfully recommended that Defendant Preferred Fire Protection Company's partial motion to dismiss be granted in part and denied in part. It is

specifically respectfully recommended that Defendant's motion to dismiss be granted with respect to Plaintiff's negligence claim, as it is barred by the gist of the action doctrine, and it is further respectfully recommended that Defendant's motion to dismiss be denied with respect to Plaintiff's breach of warranty claim.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until <u>August 1, 2014</u> to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: July 17, 2014

Respectfully submitted,

<u>s/Robert C. Mitchell</u>
ROBERT C. MITCHELL
United States Magistrate Judge

cc: *via CM/ECF electronic filing system*

    The Honorable David S. Cercone
    United States District Judge
    United States Courthouse

    Steven L. Smith, Esquire
    *on behalf of Plaintiff*

    Ashley N. Wiegand, Esquire
    Joseph L. Orszulak, II, Esquire
    Mark P. Merlini, Jr., Esquire
    *on behalf of Defendant*