IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARYLAND CASUALTY CO., a/s/o )
IMAMIA, INC., )
    Plaintiff, )
) Civil Action No.: 14-245
      vs. ) District Judge David S. Cercone/
) Magistrate Judge Robert C. Mitchell
PREFERRED FIRE PROTECTION, INC., )
    Defendant. )

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. RECOMMENDATION

Presently pending before the Court are cross motions for summary judgment filed on behalf of Plaintiff Maryland Casualty Company ("Maryland Casualty" or "Plaintiff") [ECF No. 40] and Defendant, Preferred Fire Protection, Inc. ("Preferred" or "Defendant") [ECF No. 44]. The matter has been fully briefed and is ripe for disposition. For the reasons stated herein, it is respectfully recommended that Plaintiff's motion be granted and Defendant's motion be denied.

### II. REPORT

This action arises from an incident on February 1, 2013 at the property owned by Imamia, Inc. (hereinafter "Imamia"), in which pipes connected to the automatic fire sprinkler system installed on the premises froze and burst, causing water damage to the building. Maryland Casualty provided property insurance to Imamia and expended money under the policy for damages it claims were caused by the pipe failure. Maryland Casualty, subrogated to the rights of the insured, thereafter filed suit against Preferred who installed and inspected the system.

1

### A. Procedural Background

Plaintiff commenced this action on February 24, 2014. [ECF No. 1]. The case was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with Magistrate Judges Act, 28 U.S.C. §636(b)(l) and Local Rules of Court 72.C and 72.D. On April 22, 2014, Preferred filed a partial motion to dismiss Plaintiff's tort claims based on the gist of the action doctrine. [ECF No. 6]. On July 17, 2014, a Report and Recommendation was filed in which it was recommended that Preferred's Partial Motion to Dismiss be granted with prejudice as to Plaintiff's negligence claim based upon the gist of the action doctrine, and denied in all other respects as to the remaining counts. [ECF No. 17]. On August 25, 2014, no objections having been filed, the Court adopted the Report and Recommendation as the opinion of the court and entered an appropriate order. [ECF No. 18]. The court held that "The essence of this action rests in contract; the duties breached, i.e., failing to adequately perform the repair and inspection and adequately preventing the system from freezing were, by Plaintiff's admission, obligations of the contract itself." [ECF No. 17 at 8].

The Counts which remain are breach of contract (Count II) and breach of warranty (Count III). On September 3, 2014, Preferred filed its Answer and Affirmative Defenses. [ECF No. 20]. The parties have completed discovery. The pending motions have been fully briefed and are ripe for disposition.

### B. Factual Background

Unless otherwise noted, the following facts are not in dispute.

On or about July 21, 2011, Dr. Hashim Raza, the authorized representative of Imamia, contacted Preferred and advised that he owned a building with a sprinkler system that was in need of repair. He spoke to Mike Vasilj, manager of Preferred's inspection department. Raza

2

stated that the system had frozen on the second floor which resulted in broken pipe, fittings and sprinkler heads. Raza wanted Preferred to provide a proposal to repair the breaks and put the system back into service.

After a site visit, Vasilj on behalf of Preferred provided a proposal on July 29, 2011. The proposal shows a fax time-stamp confirming that the transmission consisted of one page ("P. 001/001"), and that transmission occurred on Friday, July 29, 2011 at 13:43. It provides that Imamia must pay $2,060 in return for the scope of work. In exchange Preferred agreed to "supply material, equipment and labor to put existing sprinkler into service. . . . Sprinkler system inspection upon completion. All work shall be in accordance with applicable requirements of NFPA13." It also provides that "any broken pipe will be plugged/patched, replace any broken/leaking sprinkler heads." Furthermore, the proposal states "Upon acceptance, please sign and return." [ECF No. 43-7]. Raza signed the proposal and accepted it on behalf of Imamia.[1] He wrote the date August 3, 2011 next to his signature. The fax time-stamp shows transmission from Raza to Preferred on August 4, 2011 at 2:16 p.m.

Preferred completed the repair work pursuant to the contract on or about August 8, 2011 and performed an inspection on or about September 1, 2011. According to Plaintiff the contract was for both repairs and an inspection and thus, Preferred "completed the work pursuant to the contract" on September 1, 2011. Preferred sent its inspector Robert Koglin to perform the inspection. He followed Preferred's preprinted checklist. [ECF No. 44-3] In his Report of Inspection dated September 1, 2011, at Questions 5(d) on the checklist, Koglin was asked "In

---

[1] According to Plaintiffs, the proposal contained one page as described supra, and the signed proposal became the contract on which this suit is now largely based. In contrast, Defendants includes an additional two pages in what Defendant contends comprised the proposal. EXHIBIT A to Defendant's Motion for Summary Judgment [ECF No. 44-2]. These are entitled "Service/Contract" dated August 4, 2011 (unsigned) and an undated and unsigned reverse side, preprinted "General Terms and Conditions." Preferred has not relied upon this alternative, disputed contract in its briefs herein.

areas protected by wet system(s), does the building appear to be properly heated in all areas, including blind attics and perimeter areas where accessible?" Koglin answered "yes." Koglin understood that this answer reflected his determination that the building was properly heated.

Koglin further noted in his inspection report that there were deficiencies to the system, including lack of proper clearance between the sprinkler heads and the top of the storage, out of code sprinkler systems, and that the flow switch failed to operate so that no alarm was set off.[2] It is further noted that the owner "must maintain 40 degrees F or above for all areas protected by the wet sprinkler system." [ECF No. 44-3].

On February 1, 2013, a pipe associated with Imamia's sprinkler system froze and ruptured causing a flood on its premises. Plaintiff Maryland Casualty provided property insurance to Imamia and was required to expend money under the policy for damages it claims were caused by the pipe failure. The resulting flood caused damages in excess of $750,000. [ECF No. 40 at 1].

Both sides have conducted expert discovery. Defendant's expert, Russell Leavitt, SET, CFPS has opined that the work that was performed by Defendant for Imamia constituted substantial performance of Defendant's duties under the contract. [ECF No 46 at ¶ 14]. Although Plaintiff's expert, Dale J. Cagwin, P.E. agrees that defendant performed certain contracted work, including supplying material, equipment, and labor to put the existing sprinkler into service, and plugging, patching or replacing any broken or leaking sprinkler heads, he faults Preferred's inspection, particularly that Preferred certified that the areas protected by the sprinkler system were adequately heated.

Defendant's expert has also opined that Preferred had no responsibility to inspect, test,

---

[2] In contrast, Plaintiff argues that these "deficiencies played no causative role in bringing about the freezing of the water-filled sprinkler pipes. Preferred presents no evidence that the pipes froze due to inadequate clearance between the sprinkler heads and the top of stored items." [ECF No. 50 at ¶ 13].

4

troubleshoot, evaluate, assess, bring up to code, or perform any other action with regard to the freeze protection of the system [ECF No. 46 at ¶ 16] Plaintiff disagrees, noting that the contract's express terms obligate Preferred to "inspect" the system. Both experts agree that NFPA guidelines provide that it is the responsibility of the owner of the building to ensure adequate heating. Finally, Preferred posits, based upon testimony of Hashim Raza, that the cause of the rupture was the freezing of the pipes due to a temperature drop, and that a broken window which remained open allowed cold air into the building.

As mentioned earlier, one of the questions on the inspector's checklist was whether in areas protected by wet systems, the building appeared to be heated in all areas, *including blind attics* and perimeter areas where accessible. The inspector answered yes. Preferred's own expert observed sprinkler heads in the area of the suspended ceiling; thus, according to Plaintiff, that void space falls within the scope of the initial phrase "areas protected by wet system(s)." [Exh. E, Deposition of Leavitt at 95-96]. Preferred's supervisor Vasilj, who trained Koglin how to perform inspections, admits that the space between the lower tile ceiling and the original plaster ceiling – where the water-filled sprinkler piping was routed in this building – was indeed visible, which is to say, not a "blind attic" because the ceiling tiles had fallen to the floor prior to the freezing incident. Vasilj also testified that even if the tiles were in place, the phrase "blind attics" includes portions the inspector cannot see, such as the void space above dropped ceilings where wet sprinkler piping is run. [exh. A at 82-83].

Plaintiff's expert concludes:

    1. This incident was caused when water in the sprinkler system piping in the unheated space above the second floor suspended ceiling/insulation froze causing sprinkler heads to open.

\* \* \*

    3. The second floor furnace was functioning at the time the pipes froze.

5

4. Adequate heat was provided to prevent freezing within the insulated envelope of the second floor.

5. Preferred's failure to verify that all of the sprinkler piping was located in heated areas constituted unworkmanlike conduct and was the cause of the sprinkler pipe freeze-up and water damage.

6. Preferred's failure to correctly note on the inspection form all areas were not protected from freezing constituted unworkmanlike conduct and was a cause of the sprinkler pipe freeze-up and water damage.

[ECF No. 50 at 8].

In contrast, Preferred's expert has stated that "Preferred Fire had no responsibility or duty to inspect or test much less troubleshoot, evaluate, assess, bring up to code, or any other task in regards to the freeze protection of the system." [ECF No. 44-7 at 10] He concludes that "Preferred Fire and Mr. Koglin complied with the applicable codes and standards and exercised the required standard of care for performing the repair work and conducting the inspection and reporting the reults to Imamia. [ECF No. 44-7 at 12-14.]

### C. Jurisdiction

We have jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

### D. Standard of Review

A grant of summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Heffernan v. City of Paterson,* 777 F.3d 147, 151 (3d Cir.2015) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. *Mahoney v. McDonnell,* 616 F. App'x 500, 2015 WL 3875741 at *3 (3d Cir.2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Id.* (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). Further, the benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.,* 434 F. App'x 139, 141 n. 4 (3d Cir.2011) (citing *Falhal Corp. v. Sullivan Assocs.,* 44 F.3d 195, 200 (3d Cir.1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Id.* (citing *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Connection Training Serv. v. City of Philadelphia,* 358 F. App'x 315, 318 (3d Cir.2009) (citing *Celotex Corp.,* 477 U.S. at 324).

### E. Discussion

#### 1. Plaintiff's Motion

In order to prevail on a breach of contract claim pursuant to Pennsylvania law, a plaintiff must establish: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages caused by the breach. *Insurance Co. of Greater New York v. Fire Fighter Sales &*

7

*Serv. Co.*, 2015 WL 4635137, at *5 (W.D. Pa. July 27, 2015), *citing Haywood v. Univ. of Pittsburgh,* 976 F.Supp.2d 606, 625 (W.D. Pa.2013). In order to recover damages for a contractual breach, a plaintiff must also establish a "causal relationship between the breach and the loss." *Brader v. Allegheny General Hosp.,* 64 F.3d 869, 878 (3d Cir.1995) (citing *Robinson Protective Alarm Co. v. Bolger & Picker,* 512 Pa. 116, 516 A.2d 299, 303 n. 9 (1986)). Whether causation has been established in a breach of contract action at the summary judgment stage is "'normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue.'" *First Sealord Sur. v. Durkin & Devries Ins. Agency,* 918 F.Supp.2d 362, 388 (E.D. Pa. 2013) (quoting *Summers v. Certainteed Corp.,* 606 Pa. 294, 997 A.2d 1152, 1163–64 (2010)).

In its Answer and Affirmative Defenses Preferred sets forth the following:

> THIRTEENTH AFFIRMATIVE DEFENSE
> Plaintiff's alleged injuries and damages are due to its own comparative or contributory fault.
> FOURTEENTH AFFIRMATIVE DEFENSE
> Plaintiff's alleged injuries and damages are due to its own carelessness, recklessness, willful misconduct, or other unlawful acts.

[ECF No. 20 at 6].

Plaintiff now argues that it is entitled to partial summary judgment dismissing Preferred's Thirteenth and Fourteenth Affirmative Defenses based on the judicial determination that the gist of the action is in contract. It argues that Preferred, having elected to use the gist of the action doctrine to deprive plaintiff of its negligence claim, cannot now pursue comparative or contributory negligence defenses. According to Plaintiff, "[s]ince plaintiff's case is now limited to contract claims, Preferred likewise must be limited to contract defenses." [ECF No. 40 at 3]. Plaintiff's concern arises from evidence elicited during discovery. For example, Preferred's

8

expert witness, Russell Leavitt, SET, CFPS opined:

    3. Imamia failed to maintain the building and/or sprinkler system in a manner to ensure that the water-filled sprinkler piping was protected against freezing.

    4. Imamia's failure to maintain the building and/or sprinkler system was the direct cause of the system freeze-up, rupture, and subsequent damages.
[ECF No. 44 at 14].

Leavitt concluded that Imamia failed to adequately heat the premises in compliance with what Plaintiff characterizes as the "non-legally binding standard titled NFPA 25 'Standard for the Inspection, Testing and Maintenance of Water-Based Fire Protection Systems' issued by the National Fire Protection Association." [ECF No. 41 at 4]. Plaintiff notes that the contract between Imamia and Preferred does not mention NFPA 25,[3] and thus, the omissions alleged by Leavitt and Preferred cannot form the basis of a breach of the contract, but rather, are more aptly considered breaches of an alleged common law tort duty based on the NFPA.

In response Preferred states that "Plaintiff mischaracterizes the defenses set forth by Defendant in this matter, in that these defenses, and the opinions of Defendant's expert regarding the conduct of Imamia are *included to provide an alternate theory of causation in response to the remaining count of breach of contract.*" [ECF No. 51 at 5] (emphasis added). Preferred explains that in order to defend a claim of breach of contract, it must show that there was a lack of causation between any action if performed and the alleged damages. Preferred also notes that Plaintiff's expert similarly opined that the inspection performed by Preferred was not in accordance with a standard of care. Preferred also states that it does not intend to use the Pennsylvania Fair Share Act in its argument, trial motions or any other filings.

A defendant asserting an affirmative defense has the burden of proof as to that affirmative defense. *Reott v. Asia Trend, Inc*. 7 A.3d 830 (Pa. Super. 2010), *aff'd,* 55 A.3d 1088,

---
[3] It mentions NFPA 13.

9

1092 (Pa. 2012). Plaintiff herein relies on *Reott* in support of dismissal of Preferred's affirmative defenses because "Preferred cannot convert its affirmative defense of superseding or intervening cause into a rebuttal of plaintiff's causation evidence." We agree. In *Reott*, the trial court allowed the defendant to present evidence of highly reckless conduct in a §402A product liability case as an avenue for rebutting plaintiff's causation evidence. The Superior Court reversed, holding that "highly reckless conduct" as an affirmative defense for which defendant bears the burden of proof, and that the trial court erred in finding it admissible as it related to the element of causation.

It is therefore respectfully recommended that Plaintiff's motion be granted and that the Thirteenth and Fourteenth defenses be stricken.

### 2. Defendant's Motion

Preferred has separately moved for summary judgment as to the remaining Counts II and III on the grounds that there is no genuine dispute of material fact that plaintiff has failed to prove either that its conduct constituted a breach of the contract between Defendant and Imamia, and in addition, the necessary elements of the breach of warranty.

### a. Count II: Breach of Contract

First, Preferred argues that there is no genuine issue of material fact that plaintiff has failed to show that it breached its contract. Preferred argues that the work that it performed for Imamia constituted substantial performance of Preferred's duties under the contract. Second, Preferred argues that there is no genuine issue of material fact that the cause of the freezing and bursting of the pipes in the building was the broken and/or open window, and the temperature falling below freezing.

The United States Court of Appeals for the Third Circuit recently that "[u]nder

Pennsylvania law, substantial performance is an equitable doctrine, which applies "[w]hen a party has honestly and faithfully performed all material elements of its obligations under a contract, but has failed to fulfill certain technical obligations, causing no serious detriment to the injured party." *Leaman v. Wolfe*, No. 14-3511, 2015 WL 5813339, at *2 (3d Cir. Oct. 6, 2015) (citing *Barraclough v. Atl. Refining Co.*, 230 Pa. Super. 276, 326 A.2d 477, 480 (Pa.Super.1974).) The *Leaman* Court explained that the defendant's motion for summary judgment on the grounds that he had substantially performed under the agreement should have been denied:

This is because substantial performance is not a defense in a suit against a party for damages. 3A Arthur Linton Corbin, *Corbin on Contracts* § 702 (Joseph M. Perillo ed., 1993); *see also Riesett v. W.B. Doner & Co.,* 293 F.3d 164, 174 (4th Cir. 2002) ("Although the doctrine of substantial performance ... forbid[s] a promisee from walking away from a contract and refusing to perform his reciprocal contractual duties because of a minor breach by the promisor, it does not mean that a promisor who 'substantially performed' can avoid a lawsuit for damages by the promisee ...." (footnote omitted)); *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.,* 40 A.3d 1261, 1271 (Pa. Super. 2012) (analyzing whether breach was so substantial that "an injured party [may] regard[ ] the whole transaction as at an end"); *Exton Drive–In, Inc. v. Home Indem. Co.,* 436 Pa. 480, 490–91, 261 A.2d 319 (Pa.1969) (holding that breach of time-is-of-the essence clause in construction contract was not material and plaintiff was therefore only entitled to damages, not suspension of performance); *In re Wolfe,* 378 B.R. 96, 105 (W.D. Br. Nov. 6, 2007) ("If a party to a contract fails to perform its obligations and its breach amounts to an immaterial failure, that party still may recover in an action on the contract.").

Leaman v. Wolfe, No. 14-3511, 2015 WL 5813339, at *2 (3d Cir. Oct. 6, 2015)

Moreover, after a careful review of the record as set forth in the parties' respective concise statements of material facts, and other record evidence included in support of their arguments it is clear that there are genuine disputes of material fact as to the cause of the broken pipes and whether Preferred breached its contract, damaging Plaintiff thereby. First, we note that Preferred has done nothing to supplement the record on the issue of whether the additional two pages (Service/Contract and/or the "General Terms and Conditions") belong with the proposal and were indeed agreed to by the Imamia. Second, we note that record evidence supports

Plaintiff's contention – and creates a genuine issue of material fact -- that the inspection and repair work both fall within the scope of the contract. Preferred's Inspection Report informed Imamia that all areas protected by the sprinkler system were properly heated, including blind attics, and that Imamia should maintain the heat at a 40 degree minimum, which Imamia has evidence it did. Whether the pipes froze due to the broken window remains at issue. Preferred knew that Imamia hired it because of a prior sprinkler freeze-up. It is also clear that the expert reports directly contravene one another with respect to causation and the accuracy and completeness of the inspection. These issues must be decided by the factfinder.

It is therefore respectfully recommended that the Motion for Summary Judgment as to Count II be denied.

### b. Count III: Breach of Warranty

Alternatively, Preferred argues that Plaintiff has failed to prove the necessary elements of breach of warranty "because breach of warrant is not an available remedy with respect to a contract for services." [ECF No. 45 at 15]. Preferred cites to *Kaplan v. Cablevision of Pa., Inc.,* 48 Pa. Super (A.3d) 306, 319 (Pa. Super. 1996) in which the court held that plaintiff's claims of breach of warranty against a cable provider were invalid because the contract between the parties was a contract for services, rather than for tangible or moveable goods. In response, Plaintiff argues that this court has already considered and rejected Preferred's argument at the motion to dismiss stage.

We agree with Plaintiff. Our earlier ruling is the law of the case and therefore, it is respectfully recommended that the motion for summary judgment as to Count III be denied. Plaintiff's warranty claims rest on the implied warranty[4] that professional service contracts will be performed in a good and workmanlike manner. [ECF No. 17 at 9-10]. "The law of the case

---
[4] Plaintiff concedes it is not alleging a breach of express warranties. [ECF No. 13 at 11].

doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003). Moreover, Plaintiff has developed a sufficient record to prove that Preferred may have breached the implied warranty to perform the inspection in a good and workmanlike manner. Preferred has not presented any new evidence, supervening new law or potential for manifest injustice, *In re City of Philadelphia Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998), sufficient to override the law of the case, and it is therefore recommended that the earlier issue not be reconsidered.

### III. Conclusion

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Partial Summary Judgment be granted. It is further respectfully recommended that Defendant's Motion for Summary Judgment be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until February 11, 2016 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: January 28, 2016

    Respectfully submitted,

    s/Robert C. Mitchell
    ROBERT C. MITCHELL
    United States Magistrate Judge

cc:   *via CM/ECF electronic filing system*
     Counsel of Record
     The Honorable David S. Cercone